All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to give their attention for the court is now sitting. God save the United States and this Honorable Court. Thank you. We'll hear argument in the first case, 21-9-5-1, John Doe v. Settle. Mr. Welkner. Good afternoon, Your Honor. May it please the court, my name is Craig Welkner and I represent the appellant, John Doe. Your Honors, the Supreme Court has said that equal protection requires that a distinction made have some relevance to the purpose. Here the purpose is not Virginia's sentencing laws or criminal laws defining carnal knowledge or indecent liberties, which are manifestly rational. Rather, we challenge one provision of the civil sex offender registry, a tiny portion of its classification section, since it violates equal protection. Specifically, the section determining who must register for life and who is allowed to petition to leave the registry 15 years after their offense by seeking a public court hearing on whether they pose a risk to public safety. With respect to that purpose, who gets a hearing, there is no rational basis for the distinction that Virginia has drawn here. Allowing certain 18 and 19-year-olds who commit the great fair crime of carnal knowledge with a minor to have that hearing, while all 18 or 19-year-olds who commit the lesser crime of indecent liberties with a minor are on the registry for life. Today I hope to focus on the equal protection clause first before turning to how this application of the registry to Mr. Doe also constitutes cruel and unusual punishment. So on equal protection, Your Honors, we satisfy both of the prongs of the equal protection analysis. First, that Mr. Doe was intentionally treated differently than those similarly situated and that there is no rational basis for the distinction drawn. First, similarly situated, Your Honors, the adults who commit carnal knowledge are similarly situated to adults who commit indecent liberties. Both are normally classified as Tier 3 sex offenders, but the key difference here is that certain 18 and 19-year-olds who commit the greater crime of carnal knowledge with a minor and have only a five-year or less age gap with their victim get this 15-year remedy where they can ask for a public court hearing, while all 18 and 19-year-olds, even if they have that same five-year age gap with their victim, are on the registry for life irrevocably. And, Your Honor, the – oh, sorry, Your Honor. I was muted. I apologize. On this point of being similarly situated, does the requirements in indecent liberties of lascivious intent and of knowingly and intentionally differentiate the two offenses? No, Your Honor, and I'll take those one at a time. Your Honor, carnal knowledge inherently is a – it's the actual sex act, right? And so the intent there would only have to be that you commit the offense. And so it would be literally impossible for someone to commit carnal knowledge without indecently exposing themselves, for example. Well, but if I could just – I mean, the definition Virginia has of lascivious intent is eager for sexual indulgence, desirous of inciting to lust or inciting sexual desire and appetite. That seems to be something other than just consenting – consensual sexual relations. Maybe it's not. Maybe you say those are the same things. But it seems to have a state of mind that's different, potentially. Do you disagree with that? Your Honor, I disagree to the extent that it distinguishes these two crimes with regard to the purpose on the registry. First of all, as comparing the crimes themselves, you have to look to the purpose, which is where – here, where they rank on the registry. And Virginia has given us their logic for how they make the more serious ones more serious. And to go to your specific point, Your Honor, about the intent of the person committing the particular crime, we would submit, Your Honor, that lascivious intent would always be satisfied by anyone who committed carnal knowledge because of the way it's worded, Your Honor. The person who commits carnal knowledge must intend that act, and that act is inherently a sexual act, Your Honor. So they've intended a sexual act, and they would therefore satisfy the requirements for lascivious intent, even though you don't have to prove it as a separate element, Your Honor. So it would be essentially impossible – So your position is lascivious intent is intent to commit a sexual act. That's what it means? Your Honor, I believe it has a broader connotation than that, actually, Your Honor. I don't mean to hold you up. I think you've answered it by saying that you believe the carnal knowledge inherently requires that. I'm not sure about that. It may be right. But let me ask you one other question related to the knowledge language in the Indecent Liberties. What's your position on whether that requires that the defendant know the victim is a minor? Do you think that knowledge applies to whether the victim is a minor? Let me pull up the statute, Your Honor. And your question is specifically whether in the Indecent Liberties statute, is there a requirement that they know that the person is a minor? Yes, sir. I apologize, Your Honor. Let me just – I have it here in front of me. Let me look at it. While you're looking, counsel, you're not going to find it in the statute. But there are a number of Virginia court cases that sort of discuss this in varying degrees. I guess the way I'd frame it to reframe Judge Quattlebaum's question is, are you familiar with those cases and do you have a position on that question? Your Honor, I am not familiar with the cases on whether you have to know that your victim is a minor. I am familiar with the court's cases about – the Supreme Court's cases about how intent is required for any statute, for any criminal crime. And how – so for any crime, you have to at least at a minimum intend the act itself. And so our position would be that it doesn't distinguish these crimes with respect to the purpose at hand here. Can I change stories with you a little bit in moving from the similarly situated wrong to the sort of rational basis review? And I got a sort of a rational basis for this provision, but I want to understand where you disagree with my sort of logic, I guess, at some level. Indecent liberties involves minor defendants, right? Yes, Your Honor. And then – now most minor defendants fall under subsection B, but not all of them, right? If you have consent from a 13 to 14-year-old, you don't fall under B and therefore you fall under A. Is that fair? Sure. Yeah, I think that's true, Your Honor. All right. And I don't think these are all controversial. I just want to break it out and make sure I'm understanding. And it would be rational, it strikes me, for the legislature to say that a lifetime of registration should not be required of minor defendants. That would be a reasonable judgment to make. I understand that may not be what you think happened here, but that would be a reasonable judgment. Fair? That's fair, Your Honor. Okay. And so then I think this is where it gets hard. I want to make sure we got to that point. That if I added five years, this five-year provision for gap A – or for A offenses, the five-year gap for A offenses, doesn't that ensure that only adults under indecent liberty cases get Tier 3 classification? Because 5 plus 13 is 18 and 5 plus 14 is 19. And so we know that only adults then will fall under Tier 3. Your Honor, we do not dispute that only adults are at issue here. There's no – One way to do that would be to add five years to the age of the victim. That would ensure that I've got adults only. Your Honor, by its language, indecent liberties only applies to adult defendants. And it says – I'm sorry. Wait. I thought we started this conversation by saying that indecent liberties under A and B can include minor defendants. Your Honor, carnal knowledge can include minor defendants. Indecent liberties is limited to any person 18 years of age or over. Okay. Apparently, I have them backwards. All right. So carnal knowledge – all right. So that's fair. All right. I have them backwards in my own mind. All right. So carnal knowledge – so I just have it – Your Honor, I think – I understand your question though. I still think I understand your question. And maybe I could state it back to you and then try to answer it to make sure that I have it right. Your point is that there's a difference in defendants here. And just to flip it, there can be a 17-year-old convicted of carnal knowledge. That's right. I'm sorry. I have it backwards. Yes, you're right. Whereas, there could never be a 17-year-old convicted of indecent liberties. And so the state here is saying, well, look, we have a 17-year-old defendant. Isn't it rational to have a distinction between the two statutes then in their treatment to treat carnal knowledge more leniently? And, Your Honor, that's a distinction without a difference for two reasons. First of all, the 17-year-olds are treated more leniently. And, of course, that makes sense. But there's no 17-year-old comparison for indecent liberties. So it's just not relevant to the comparison at issue. No, no. But what I'm saying is, is if you have – if what my goal as a legislature was, was to ensure that carnal knowledge was only a Tier 3 offense if the offender was an adult, why isn't one method of doing that adding five years to the age of the victim? That is rational, Your Honor. I completely agree that that goal, if it was the legislature's goal, is a rational one. The point is that they've also included 18-year-olds and 19-year-olds who commit carnal knowledge within the scope. That's what we're comparing. But that, to me, seems to me to be an argument about over- or under-inclusiveness, right? So in other words, the method that they chose to ensure adults is under- or over-inclusive, depending on which direction you're looking. But we know pretty clearly that rational basis doesn't permit us to look at under- and over-inclusive. So if adding five years is a rational way of ensuring adults, the fact that it's under- or over-inclusive might matter if this was intermediate scrutiny or strict scrutiny. But that doesn't matter for rational basis. That's the rub that I've got. I understand your argument. If we're in intermediate scrutiny or strict scrutiny, it may well prevail. But in rational basis, we don't get to do that, do we? No, Your Honor. We do not do over-inclusiveness analysis in equal protection. And I think this is a crucial point, so please allow me to make two points about it. First, Your Honor, this is only a motion to dismiss. So say we won the case. Virginia would still have that exact objective fulfilled because there would be no effect on 17-year-olds. There would be no effect on carnal knowledge at all. And secondly, you have to, for equal protection, you must consider the purpose and the two classes. The 18- to 19-year-olds must be compared to 18- to 19-year-olds on the other side because of the nature of equal protection analysis. You have to compare the distinction and the reason for it. For example, imagine— So I don't think that's right because once you say they're similarly situated, and I'll grant you that at least for the purpose of the discussion, we then look into rational basis is what the legislature did rationally, right? Did the act they take—so in other words, did the five-year provision for— was that decision on their part rational? No, Your Honor. And if you'd allow me to give an example, say that Virginia said that those in the western district can vote at 18 and those in the eastern district of Virginia can vote at 21. There's this 18- to 21-year-old gap where the 18- to 21-year-olds in one district would sue, saying, why can't we vote? It's not relevant to say 17-year-olds can't vote anywhere. There are plenty of good reasons for not allowing 17-year-olds to vote. We could go on and on about how 17-year-olds are not allowed to vote for perfectly good reasons, but when you face an equal protection claim comparing 18-year-olds to 21-year-olds to another class of 18- to 21-year-olds, it's simply not relevant to talk about the impact of that law on 17-year-olds because it's just— Mr. Welkner, let me give you—I don't want to run your time over too much, but give you something perhaps to address on rebuttal. We have a situation here, don't we, where only adults can be Tier 3 offenders under either statute? You can't be a Tier 3 offender unless you're an adult. So why isn't that a rational basis for the legislature to make a policy decision that these adults who commit these crimes should be treated as Tier 3 people for purposes of registration, for purposes of public safety? So if you think about that and address it on your rebuttal. It suits me if you don't mind going ahead and answering it because I'm interested in the answer too. Yes, Your Honors. Having 18-year-olds be Tier 3 is manifestly rational. Your Honors. The point is that under equal protection, you have to compare the classes and say, why is there a distinction between the two classes? Why is there a difference? You first look at the distinction, and here the distinction is, why do you have this law for carnal knowledge and a different law for indecent liberties? So bringing up something that's similar is simply not relevant. You say, why is there a difference? And do they have a rational basis for the difference? And the difference here is 18- to 19-year-olds. What is the reason for the difference with regard to 18- to 19-year-olds? They proffered zero reasons, Your Honor. And I'm happy on rebuttal to address the reasons they have given for that distinction. Thank you. Madam Solicitor General. Good afternoon, Your Honors, and may it please the Court. Michelle Callan for Defendant Colonel Settle. In 2007, Mr. Doe pled guilty to taking indecent liberties with a minor under the age of 15 in violation of Virginia law. Doe's guilty plea triggered the consequences of placement under the highest classification of Virginia's sex offender registry. Doe asserts that given the specific facts of his situation, had he pled guilty to another statute, carnal knowledge, he would have been eligible for classification under a lower tier of the sex offender registry. Doe's complaint alleges that his defense attorney never told him of the registry consequences of pleading guilty, and had Doe's attorney notified him of the registry consequences of pleading guilty to indecent liberties, Doe would not have pled guilty to that offense. But Doe's criminal defense attorney is not named in this suit, and this appeal is about whether Virginia's sex offender registry violates the Equal Protection Clause, Due Process Clause, or Eighth Amendment to the United States Constitution. I will address each constitutional claim in turn. As to his Equal Protection Claim, Doe is treated the same as everyone else in Virginia convicted of taking indecent liberties with a minor under the age of 15. He claims that in his particular situation, had he pled guilty to a different crime, carnal knowledge, he would be classified under Tier 1 of the registry. It is important to emphasize that that is not the case for most people convicted of carnal knowledge of a 13 or 14-year-old in Virginia. As explained in footnote 11 of our brief, most adults convicted under this provision are classified under Tier 3, just like Mr. Doe. Under a limited carve-out, those convicted of carnal knowledge of a child between the ages of 13 and 15, but who are less than five years older than their victim, and who are neither delinquent nor repeat offenders are classified under Tier 1 of the registry. As an initial matter, we do not know for certain that Doe met the qualifications to be classified under Tier 1. We know that Doe was less than five years older than his victim. He was 18 at the time of the offense, and she was 14. But we do not know whether Doe has been convicted or adjudicated delinquent of offenses that would make him ineligible to be classified under Tier 1. But even assuming that Doe's particular situation is such that had he pled guilty to carnal knowledge, he would have been eligible for this carve-out, that is not the proper lens with which to view an equal protection challenge. The proper lens is looking at the statutes themselves and their elements. Counsel, so help me understand. I understand your argument in your brief, too, says they're different crimes, therefore they cannot be similarly situated. The challenge with that is Skinner. I mean, I take your first principles argument, but Skinner tells us that embezzlement and larceny, which have different elements, are similarly situated, you know, thrice convicted of one or the other. And they have plainly different elements, and yet the court there said that's the similarly situated. It then went on to apply strict scrutiny at the second step. But those are analytically distinct of whether they're similarly situated and what the level of scrutiny we apply is. And so it strikes me that Skinner requires that we find where the statutes are so similar as they are here, just like in larceny and embezzlement, that they're similarly situated. It doesn't dictate the second question, which is about rational basis instead of strict scrutiny. But how do I get around Skinner? I think that the best explanation and the best understanding for Skinner, given that it was an 80-year-old case that— It is still as binding as it was the day it was issued on me. Certainly, Your Honor. And I think it's best understood because Skinner involved a fundamental right and therefore triggered strict scrutiny. And so it didn't—the proper analysis is not the analysis involved in a case like this where— So can you give me any other example where the degree of scrutiny at step two affects how similarly situated at step one? I mean, they're just two analytically different steps, at least as the court tells us to apply them. So why would the level of scrutiny at step two change the similarly situated analysis at step one? I mean, I've never seen anybody suggest that. I mean, maybe it's a good idea, but has anybody ever done that? I think the idea with Skinner is that because it involves a fundamental right, it doesn't arise in the situation of the comparison in the same way. But why would that be, right? I mean, there's a two-step question, similarly situated, and then what is the level of scrutiny? And the threshold question of similarly situated, Skinner says Larson and Besselman are similarly situated. I mean, I get your first principles argument, but what I can't get my head around is how I handle Skinner. Sure. I think that Skinner itself also looked at the statutes themselves and the elements of the statutes themselves, not how they can apply in one particular situation and how there might appear to be an inequity in the particular situation. And so I think that's why here it's important to look at the particular statutes at issue and decent liberties and carnal knowledge and compare the elements of those. And we lay out in our brief why those statutes involve different defendants, but most importantly, different victims, though. And as this court pointed out, also different acts. So because one requires a men's right. They're different acts, but doesn't... I mean, they are different, but so, too, was Larson and Besselman. They, too, have different elements. But the point here is that I think maybe you disagree with this idea, but that those that have committed carnal knowledge have by definition committed indecent liberties. We don't agree with that, Your Honor. I mean, certainly, there's bound to be substantial overlap, but just even as this court was discussing the word lascivious or my pronunciation. I don't know how to say it. But, you know, I direct the court's attention to a Virginia Supreme Court case that defines the term. That's the McKeon case, 2-1-1-VA-24, where the court describes the term as a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire or appetite. To be sure, that may be a precursor to carnal knowledge, but it's not necessarily so. And I think... Is there an example, and I hesitate to ask, but I feel I need to. Can you think of any example where you could be convicted of carnal knowledge and not have such intent? I mean, they seem to be sort of one in the same. I think this is where, you know, if the genders were reversed here and the woman were the older person in this situation,  and so I think certainly often if there is an older male offender, it seems natural that one would necessarily encompass the other. But I think the intuition, if the genders were reversed, can highlight how the two statutes are not necessarily one in the same. I think it also bears emphasizing that just because it's possible or likely that they overlap does not mean that there is sufficient evidence to charge and convict in terms of the actual intent required in indecent liberties. And I think it does... Second time I've done that. I'm sorry. Related to the... I asked this question of your colleague. Do you have a position on whether indecent liberties requires that the defendant know that the victim is a minor? Not necessarily, Your Honor. There are certain statutes in Virginia that encompass minor victims where it says that the defendant has to know or have reason to believe that the victim is a minor and there is no such language here. But certainly we know that defendants have raised as a defense when the victim is not a minor. But your position is that that's not required, that knowing means the act itself. It's not an accidental act. Is that correct? Yes, Your Honor. Knowing or the intent applies to the acts that are described in the numbered sections of that statute. But I do think it does bear distinguishing the two statutes here. The carnal knowledge statute that Doe invokes involves victims between the ages of 13 and 15, whereas indecent liberties involve any child younger than 15 and can encompass a victim that's even an infant or a toddler. The statutes also involve different defendants. But in that way, we acknowledge that it's the lesser included, right? That 13 and 14 are included within the less than 15. Certainly, Your Honor. I mean, that's the rub I'm having here is why one's not effectively included in the other. I think in terms of... If Your Honor is asking whether carnal knowledge is effectively included in indecent liberties, then I think that gets back to the idea that there could be situations, and there are situations in which a person can be guilty of carnal knowledge or the evidence can be there to convict of carnal knowledge but not of indecent liberties. To the extent that this court is asking about the kind of five-year age gap that's included in the registry carve-out, that's unique to carnal knowledge. And the carnal knowledge statute itself, Section A applies to all adults, but Section B applies when the defendant is a minor, him or herself. And so the carnal knowledge statute itself... Can you make sure that I understand that as well? So if I'm a minor defendant, but there is not sort of qualified consent of a 13- or 14-year-old, don't I fall in subsection A, not B? Right, because B requires both minor defendants and qualified consent by the 13- or 14-year-old. So if either of those is missing, I go to A. So I can be a minor and be in A, right? That's correct, Your Honor, because A says if any person cardinally knows, whereas indecent liberties, the first requirement is any person 18 years of age or older. That's correct, Your Honor. So carnal knowledge, even Section A, encompasses minors as well, which is why the two statutes involve different defendants. Likewise, the two statutes involve different acts, as we discussed earlier. And it makes sense to treat the statute that applies only to adult offenders and applies to significantly younger victims more stringently than the rare case when the victim is age 13 or 14 and the perpetrator is less than five years older than the victim. Because Doe is not similarly situated to someone convicted of a different offense of carnal knowledge, his equal protection claim fails at the first step. But Doe's claim also fails at the second step of an equal protection claim because classifying the offense of taking indecent liberties with a minor under the age of 15 as Tier 3 is well within the legislature's purview and is rationally related to the Act's goal of protecting the public. The registry is based on the premise that offenders who commit certain crimes, especially sex crimes involving very young children, are more likely to re-offend. The difference in registry treatment can easily be explained by the idea that people who offend against younger children with the mens rea of indecent liberties are more likely to commit this crime again. It makes sense to treat— So what do I do with the idea that carnal knowledge is punished more stringently otherwise? So how do I— It seems to me that in other contexts and in other ways, the objective evidence here suggests that Virginia considers carnal knowledge to be a more serious offense. It's a longer sentence, longer everything else. And then Virginia comes back and says, no, no, no, no, but for this purpose, we should think about it opposite. How can I do that? I think it's not that Virginia is thinking of it opposite, Your Honor. I think it's that the inquiry with regard to the registry is different. It's not a matter of punishing for past offense. It's a question of protecting the public against future offense. And so the legislature could reasonably conclude that the person who entices or solicits or engages in the other acts as part of indecent liberties is more likely to re-offend than a person within five years of a 13 or 14-year-old who carnally knows that victim one time. But would that same analysis apply to someone who is within five years in indecent liberties? Because that gets rid of the very young victims. But I think it also—it's important to understand the mens rea and the acts at issue in indecent liberties. And so it would be rational for the legislature to conclude that a person who entices a child is more likely to entice a child again as opposed to carnally knowing a 13 or 14-year-old a single time. And it bears emphasizing— I'm sorry. I hate to ask this, but help me understand why that would be, why we would think it's more likely for someone who, you know, propositions a minor that they're going to re-offend than it is someone who actually engages in the sexual act with the minor. I think because also that indecent liberties includes more than just propositioning. It's also exposing oneself or enticing. And so the legislature could conclude that a person who does that, that that's something that's repeated more often than a single act of carnally knowing a child 13 or 14 years old. I think it also bears noting that, you know, in order to be eligible for the Tier 1 classification, the person could not have been adjudicated multiple times. And so it goes to the issue of whether or not the person is more likely to be a repeat offender. And we entrust legislatures with making those—with making those—drawing those lines. The fact that an individual hypothetical situation might encompass both crimes, such that feeding guilty to indecent liberties yields a higher classification under the registry, is not a basis for declaring the registry unconstitutional. And this court explained in Wilson v. Ling that concern for a particularized situation is not grounds for voiding a regulation designed to deal with thousands of cases. I'd like to just quickly address also the Eighth Amendment claim here. In my remaining minutes, both the Eighth Amendment claim and the due process claim, Doe sets forth general arguments suggesting that the registry itself is unconstitutional. But the United States Supreme Court and this court have rejected arguments that sex offender registries enact punishment. We think the Supreme Court's decisions in Smith v. Doe and this court's decisions in U.S. v. Under Seal and in Wass govern here. Doe has not shown that the registry provisions to which he is subject in Virginia depart so far from federal SORNA that the Virginia registry constitutes punishment, even though Alaska's registry in Smith or SORNA in Under Seal and Wass do not constitute punishment. Can I ask just a conceptual question here? Your colleague argues for equal protection purposes that the registry is a civil matter. It's a collateral consequence. And then argues that the Eighth Amendment case, that it's a punishment. Do those two have to be the same? If it's a punishment for Eighth Amendment purposes, is it also a punishment for equal protection purposes or vice versa? I agree with your honor that the arguments cannot be squared. I don't think that the. I guess I would say, your honor, I'm not exactly sure what my friend on the other side means by punishment in the context of the equal protection context and why that matters to the analysis. But from our perspective under the. Well, he says it matters because that Skinner itself. Right. In order to put himself squarely in Skinner, which is a collateral consequence of sterilization. He says this is a collateral consequence, not a punishment. Right. And so I think that's the analysis there. And then in the Eighth Amendment, he says, but it's punishment here. My point is they have to be the same. Yes. Yes, your honor. And I also think it bears noting that the Skinner analysis that my friend on the other side sets forth cannot be squared or cannot. There's no limiting principle to it such that it should be applied to collateral consequences and not directly to the punishment itself. But I think that the precedent is very well established that sex offender registries just like Virginia's do not enact punishment. And for both purposes of equal protection and for purposes of the Eighth Amendment and in the ex post facto context as well. Counsel, could I ask you something on the Eighth Amendment issue? Assume the assumed gets past the inconsistency, if you will, of collateral consequences and in one claim and punishment on the other. Did the district court adequately address the Smith factors? They cite Smith, but it doesn't seem like they really go through them. I understand your arguments about why they indicate there's no punishment here. But I didn't see really the district court go through those. I think that I think what the district court did was proper because this court, if I recall correctly, it's in loss. Emphasize that that the factors are just useful guideposts. They're not requirements that the court go through them step by step. And in many sex offender cases, courts do not go through them. And in fact, it's generally understood that the last two of the factors are not really relevant in that context. And so using them as a guidepost is precisely what the Supreme Court has advised courts to do. And what this court has done also in rate, if I recall, in rate under seal and in loss. I'd like to also just quickly address those substantive due process argument, just that it fails for the same rational basis review that that the equal protection claim fails. The difficulty, your honors, in those situation is that he pled guilty to taking indecent liberties with a minor younger than 15 and not to carnal knowledge of a child between the ages of 13 and 15. That is a consequence of his plea, not the registry. The registry is constitutional, and we therefore ask that this court affirm. Thank you. Mr. Welkner. Yes, your honors. Your honors, I want to focus on the equal protection clause still. But I first want to remind the court that we have also the Hester Prynne case, which another panel of this court has decided in an unpublished decision. That as pled in an almost identical complaint that the punitive aspect of the cruel and unusual punishment clause, which has the same analysis. That was the next post facto claim that this registry is punitive or could be punitive on a motion to dismiss stage. But your honor, for the equal protection purposes, if Virginia has a rational basis, it must be a rational basis for this distinction. That is how the equal protection claim works. And so it is no good for Virginia to point to bases for the law that have nothing to do with it. Why is that the distinction here? Right. Is that the statute treats carnal knowledge and indecent liberties differently. Right. And for one of them being carnal knowledge, it has a five year provision and for the other, it does not. Right. And so why? What's the rational reason for having a five year provision for carnal knowledge? That's because it would otherwise apply include minors. Your honor, that's that may be well and good for 17 year olds, but it doesn't address 18 and 19 year olds. And why? Because that's not even a distinction. The question is whether whether the legislature has a rational basis for taking the action they took for making the classification that they've made. Yes, your honor. But these are greater crimes of carnal knowledge as compared to a lesser crime of indecent liberties. And as regards to 18 and 19 year olds, the only crime under which an indecent liberties can occur. There is no reason for this distinction between the two to treat the greater a crime less. It's as though Virginia decided to execute attempted murderers, but not actual murderers. There may be extreme differences between actual murder and attempted murder, but there's no rational basis for having execution for attempted murderers. Could it be an equal protection clause problem if they instead of saying five years, they said carnal knowledge for those over 18? That wouldn't be an equal protection problem, would it? If the registry said that this five year provision only applies to 18 and 19 year olds? No, only apply instead of five years, it just says, you know, carnal knowledge for those 18 and older. Your honor, that would be exactly what violates the equal protection clause, because then you wouldn't even have 17 year olds. It would be even more irrelevant to talk about 17 year olds because it would just be a one to one 18 to 19 year old. And your honor, it is, in fact, in this case, a one to one comparison between 18 and 19 year olds in one versus the other. If it's not relevant, just like in my voting example, your honor, if you said in the western district of Virginia, you have to be 21 to vote instead of 18 in the eastern district. It's simply not relevant to say, oh, 17 year olds in both districts are treated the same. It doesn't matter because you have to look at 18 to 21 year olds and come up with a reason for that distinction. And here you are. I did want to address the men's area. Excuse me, Mr. Walker. The trouble I'm having, though, with your argument is you seem to overlooking the fact that it's a offense. Conduct can be more serious for public safety purposes than it is classified in terms of the criminal conduct by the legislature. Why can't the legislature make that distinction just because you see overlaps in the statute? But if we're looking at the logic, it seems to me that you can see a distinction in public safety here, irrespective of whether it's a class for or classified felony. And why can't that have been the primary concern of the legislature in drawing these distinctions when you have a statute like Indecent Liberties that has different conduct, different victims and different defendants? And and with the public safety lens, it skews in favor of the more serious tier three offender classification. I'm just worried about whether we're, you know, we're being a super legislature here. Your Honor, I am sensitive to that concern as well. And but if this court were to adopt the logic that you laid out here, the court would be adopting a logic that would explicitly contradict the logic that this both Virginia and its legislature and on brief have embraced here. They've explicitly said I direct the court to pages 19 and 20 of their brief. They've said that the registry makes the more serious offenses tier three, while the less serious ones would be tier two or tier one. And that that and they quoted this court on that. And they said that's what the Virginia registry does, too. And, Your Honor, you I want to talk about mens rea. And I was able to look up the Supreme Court case and both and also a Virginia case about mens rea and the alleged distinctions here, Your Honor. First of all, I direct the court's attention to the Supreme Court case of Elonis, which is one thirty five Supreme Court two thousand one. Your Honor, in that case, the Supreme Court said that every single criminal act must have a mens rea in that you must at least intend the act. And so here. Carnal knowledge or indecent liberties, both of them must have as a minimum that you intend the act. And your honors, I would direct your attention to the elements of carnal knowledge. If I may briefly finish, Your Honor. Your Honor, if you look at the elements of carnal knowledge. It would require a person to intend an actual sex act with a minor, a 13 or 14 year old. Your Honor, that's a terrible crime. And under Virginia law, that would also satisfy lascivious intent, which, as all the parties here have stated. I won't repeat the elements there, but your honor, that can be proven under Virginia law by showing that the defendant made gestures towards himself or to the child or that the defendant was sexually aroused. Your honors, it is respectfully impossible to commit carnal knowledge without also satisfying lascivious intent. And so under the logic that Virginia has told you for its registry and the logic of its criminal statutes, there is no rational basis for putting Mr. Doe on the registry for the rest of his life. While those who commit carnal knowledge have this due process remedy. And your honors, I refer to my briefs for the cruel and unusual punishment arguments. Thank you very much, counsel. As you both know, in normal times, we would come down and have the opportunity to shake your hands and greet you and thank you for your argument. We do that virtually instead, but very much appreciate your well argued case.
judges: Julius N. Richardson, A. Marvin Quattlebaum Jr., Barbara Milano Keenan